# EXHIBIT A

## STANDARD FORM OF UNION AGREEMENT
### Sheet Metal, Roofing, Ventilating and Air Conditioning
### Contracting Divisions of the Construction Industry

Agreement entered into this 1st day of June, 2009 by and between **Casper Area Contractors Group** hereinafter referred to as the Employer, and **Local Union No. 103 of Sheet Metal Workers' International Association**, hereinafter referred to as the Union, for Campbell, Fremont, Converse, Crook, Johnson, Natrona, Niobrara, Weston, Sheridan, Big Horn, Hot Springs, Washakie Park, Teton, Uinta, Sweetwater, Lincoln and Sublette counties of Wyoming.

## ARTICLE I

**Section 1.** This agreement covers the rates of pay, and conditions of employment of all employees of the employer engaged in but not limited to the (a) manufacture, fabrication, assembling, handling, erection, installation, dismantling, conditioning, adjustment, alteration, repairing and servicing of all ferrous or nonferrous metal work and all other material used in lieu thereof and of all air-veyor systems and air handling systems regardless of material used including the setting of all equipment and all reinforcements in connection therewith; (b) all lagging over insulation and all duct lining; (c) testing and balancing of all air-handling equipment and duct work; (d) the preparation of all shop and field sketches used in fabrication and erection, including those taken from original architectural and engineering drawings or sketches; (e) metal roofing; and all other work included in the jurisdictional claims of Sheet Metal Workers' International Association.

## ARTICLE II

**Section 1.** No Employer shall subcontract or assign any of the work described herein which is to be performed at a job site to any contractor, subcontractor or other person or party who fails to agree in writing to comply with the conditions of employment contained herein including, without limitations, those relating to union Security, rates of pay and working conditions, hiring and other matters covered hereby for the duration of the project.

**Section 2.** Subject to other applicable provisions of this Agreement, the Employer agrees that when subcontracting for prefabrication of materials covered herein, such prefabrication shall be subcontracted of fabricators who pay their employees engaged in such fabrication not less than the prevailing wage for comparable sheet metal fabrication, as established under provisions of this Agreement.

**Section 3.** Certain instances may arise in which it is not possible or practical to subcontract some of the Specialty work contained in Article I to an employer who will agree to all the terms of this agreement. The Employer agrees to utilize the local's hiring hall when it is possible and practical on all work contained in Article I of this Agreement, if certain instances do arise, they should be discussed between the Employer and the Local Union Business Manager prior to subcontracting.

1

EXHIBIT A

## ARTICLE III

**Section 1.** The Employer agrees that none but journeyman, apprentice, and pre-apprentice, sheet metal workers shall be employed on any work described in Article I. And further, for the purpose of proving jurisdiction, agrees to provide the Union with written evidence of assignment on the employer's letterhead for certain specified items of work to be performed at a jobsite prior to commencement of work at the site. List of such specified items, which may be revised from time to time as agreed to by and between SMACNA and SMWIA, shall be provided to the employer.

## ARTICLE IV

**Section 1.** The union agrees to furnish upon request by the Employer, duly qualified journeyman and apprentice sheet metal workers in sufficient numbers as may be necessary to properly execute work contracted for by the Employer in the manner and under the conditions specified in this Agreement.

**Section 2.** It is understood and agreed that there shall be no discrimination concerning compensation, working conditions, hiring, termination, or any other term or provision of this agreement because of age, race, color, sex, religious preference, or national origin of the employee or prospective employee, and the Union shall take immediate action to seek compliance with Title VII of the Equal Employment Opportunity Commission.

## ARTICLE V

**Section 1.** The Employer agrees to require membership in the Union, as a condition of continued employment of all employees performing any of the work specified in Article I of the Agreement, within eight (8) days following the beginning of such employment or the effective day of this agreement, whichever is the later, provided the Employer has reasonable ground for believing that membership is available to such employees on the same terms and conditions generally applicable to other members and that membership is not denied or terminated for reasons other than the failure of the employee to tender the periodic dues and initiation fee uniformly required as a condition of acquiring or retaining membership.

**Section 2.** If during the term of this Agreement the Labor- Management Relations Act of 1947 shall be amended by Congress in such manner as to reduce the time within which an employee may be required to acquire union membership, such reduced time limit shall become immediately effective instead of and without regard to the time limit specified in Section 1 of this Article.

**Section 3.** The provisions of this Article shall be deemed to be of no force and effect in any state to the extent to which the making or enforcement of such provision is contrary to law. In any state where the making and enforcement of such provision is lawful only after compliance with certain conditions precedent, this Article shall be deemed to take effect as to involved employees immediately upon compliance with such conditions.

2

**Section 4.**     The employer agrees to deduct Union dues, assessment or service fees (excluding fines and initiation fees) from each week's payoff those employees who have authorized such deductions in writing, irrespective of whether they are Union members. Not later than the twentieth day of each month, the Employer shall remit to the designated financial officer of the Union the amount of deductions made for the prior month, together with a list of employees and their Social Security numbers for whom such deductions have been made.

## ARTICLE VI

**Section 1.**  The regular working day shall consist of eight (8) hours labor in the shop or on the job between six (6) A.M. and six (6) P.M. and the regular working week shall consist of five (5) consecutive eight (8) hour days labor in the shop or on the job, beginning with Monday and ending with Friday of each week.  All full time or part time labor performed during such hours shall be recognized as regular working hours and paid for at the regular hourly rate. Except as otherwise provided pursuant to section (4) of this Article, all work performed outside the regular working hours and performed during the regular work week, shall be at (see addenda) times the regular rate.

**Section 2.**     New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day, and the day after Thanksgiving Day; Christmas Day or days locally observed as such shall be recognized as holidays.

All work performed on holidays shall be paid as follows: (see addendum #1) In case a holiday falls on a Sunday the following Monday shall be a holiday; in case a holiday falls on a Saturday the preceding Friday shall be a holiday.

**Section 3.**  It is agreed that all work performed outside of regular working hours during the regular workweek and holidays shall be performed only upon notification by the Employer to the local union in advance of scheduling such work. Preference to overtime and holiday work shall be given to employees on the job on a rotation basis so as to equalize such work as nearly as possible.

**Section 4.** Shift work and the pay and conditions therefore shall be only as provided in written addendum attached to this Agreement. Energy conservation-- Retrofit work performed outside the regular work day in occupied buildings shall be performed under shift work conditions to be established by the local parties or by the National Joint Adjustment Board on the request of either party, if not locally provided.

3

EXHIBIT A

## ARTICLE VII

**Section 1.** When employed in a shop or on a job within the limits of (see addenda) employees shall be governed by the regular working hours specified herein and shall provide for themselves necessary transportation within the said limits from home to shop or job at starting time and from shop or job to home at quitting time, and the Employer shall provide, or pay, for all necessary additional transportation during working hours.

**Section 2.** When employed outside of the limits specified in Section 1 of this Article, and within the jurisdiction of the Union, employees shall provide transportation for themselves which will assure their arrival at the limits specified in Section 1 of this Article at regular starting time, and the Employer shall provide or pay for all additional transportation for such jobs, including transportation from such job back to the limits specified in Section 1 of this Article which will assure arrival at such limits at quitting time. As an alternative to the foregoing method, travel expense may be paid by another method of payment. If this alternative method is used, it will be as provided in a written addendum attached hereto.

## ARTICLE VIII

**Section 1.** The minimum rate of wages for journeymen sheet metal workers covered by this Agreement when employed in a shop or on a job within the jurisdiction of the Union to perform any work specified in Article 1 of this Agreement shall be (see addenda) per hour, except as hereinafter specified in Section 2 of this Article.

**Section 2.** On all work specified in Article 1 of this Agreement, fabricated and/or assembled by journeymen sheet metal workers and/or apprentices within the jurisdiction of this Union, or elsewhere, for erection and/or installation within the jurisdiction of any other Local Union affiliated with Sheet Metal Workers' International Association, whose established wage scale is higher than the wage scale specified in this Agreement, the highest wage scale of the job site Union shall be paid to the journeymen employed on such work in the home shop or sent to the job site.

**Section 3.** The provisions of Section 2 of this Article, Section 2 of Article II and Section 1 or Article III shall not be applicable to the manufacture for sale to the trade or purchase of the following items:

| | |
|---|---|
| 1. Ventilators | 7.  Mixing (attenuation) boxes |
| 2. Louvers | 8.  Plastic skylights |
| 3. Automatic and fire dampers | 9.  Air diffusers, grilles, registers |
| 4. Angle rings | 10. Sound attenuators |
| 5. Chutes | 11. Double-wall panel plenums |
| 6. Radiator and air conditioning unit enclosures | 12. Fabricated pipe and fittings for residential installations and commercial work as defined in the locality. |

4

EXHIBIT A

**Section 4.** The provisions of Section 2 of this Article shall not be applicable to Air Pollution Control Systems fabricated for the purpose of removing air pollutants, excluding air conditioning, heating, and ventilating systems. In addition, the provisions of Section 2 of this Article will not be applicable to the manufacture of spiral pipe and fittings.

**Section 5.** Except as provided in Sections 2 and 6 of this Article, the employer agrees that journeymen sheet metal workers hired outside of the territorial jurisdiction of this Agreement shall receive the wage scale and working conditions of the local Agreement covering the territory in which such work is performed or supervised.

**Section 6.** When the Employer has any work specified in Article I of this Agreement to be performed outside of the area covered by this agreement and within the area covered by another agreement with another Union affiliated with the Sheet Metal Workers' International Association and qualified sheet metal workers are available in such area, he may send no more than two (2) sheet metal workers per job into such area to perform any work which the Employer deems necessary, both of whom shall be from the employer's home jurisdiction. All additional sheet metal workers shall come from the area in which the work is to be performed.
Journeymen sheet metal workers covered by this Agreement who are sent outside of the area covered by this Agreement shall be paid at least the established minimum wage scale specified in Section I of this Article but in no case less than the established wage scale of the local Agreement covering the territory in which such work is performed or supervised plus all necessary transportation, travel time, board and expenses, while employed in that area, and the Employer shall be otherwise governed by the established working conditions of that local Agreement. If employees are sent into an area where there is no local Agreement of the Sheet Metal Workers' International Association covering the area then the minimum conditions of the home local union shall apply.

**Section 7.** In applying the provisions of Section 2, 5, and 6 of the Article VIII, the term "wage scale" shall include the value of all applicable hourly contractual benefits in addition to the hourly wage rate provided in said Sections.

**Section 8.** Welfare benefit contributions shall not be duplicated.

**Section 9.** Wages at the established rates specified herein shall be paid by electronic and/or automatic deposit, in cash or by check in the shop or on the job at or before quitting time on Friday of each week, and no more than two (2) days pay will be withheld. However, employee when discharged shall be paid in full.

If a discharged employee is to be paid by electronic and/or automatic deposit, the deposit shall be made no later than 3:30 P.M. the following day.

**Section 10.** Journeymen sheet metal workers, who report for work by direction of Employer and are not placed at work, shall be entitled to two- (2) hour's pay at the established rate. This provision, however, shall not apply under conditions over which the Employer has no control.

EXHIBIT A

**Section 11.** Each Employer covered by this Agreement shall employ at least one (1) journeyman sheet metal worker who is not a member of the firm on all work specified in Article I on this Agreement.

**Section 12.** Effective as of the date of this Agreement the Employers will contribute to the International Training Institute for the Sheet Metal and Air Conditioning Industry, twelve cents ($0.12) per hour for each hour worked by each employee of the employer covered by this Agreement. Please see Addendum #1 and #4. Payment shall be made on or before the 20th day of the succeeding month and shall be remitted as designated by the Trustees of the Fund, or for purposes of collection and transmittal through the Sheet Metal Worker's National Benefit Funds.

Effective as of the date of this Agreement the employers will contribute to the National Energy Management Institute committee, a jointly administered trust fund, three cents ($0.03) per hour for each hour worked by each employee of the employer covered by this Agreement. Payment shall be made on or before the 20th day of the succeeding month and shall be remitted as designated by the Trustees of the Fund, or for the purposes of collection and transmittal through the Sheet Metal Worker's National Benefit Fund.

Effective as of the date of this Agreement the employers will contribute to the Sheet Metal Occupational Health Institute Trust two cents ($0.02) per hour for each hour worked by each employee of the employer covered by this Agreement and the Institute Trustees determine that the Trust is financially self-sufficient. Payment shall be made on or before the 20th day of the succeeding month and shall be remitted as designated by the Trustees of the Trust, or for purposes of collection and transmittal through the Sheet Metal Worker's National Benefit Funds.

The parties to be bound by the separate Agreements and Declarations of Trusts establishing the International Training Institute for the Sheet Metal and Air Conditioning Industry, the National Energy Management Institute committee.

The Sheet Metal Occupational Health Institute Trust and the Industry Fund of the United States and the separate agreements and declarations of trusts of all other local or national programs to which it has been agreed that contributions will be made. In addition, the parities agree to be bound by any amendments to said trust agreements as may be made from time to time and hereby designated as their representatives on the Board of Trustees such trustees as are names together with any successors who may be appointed pursuant to said agreements.

The parties authorize the trustees of all national funds to cooperatively establish uniform collection procedures to provide for efficient and effective operation of the various national trusts.

**SECTION 13.** In the event that the Employer becomes delinquent in making contributions to any national or local Fund, the Union may withdraw all employees from the service of the Employer within fifteen (15) days notice of such delinquency by the trustees. The withdrawal of such employees from the service of the Employer shall not constitute a violation of any provision of this Agreement.

6

EXHIBIT A

**SECTION 14(a).** The Employer shall comply with any bonding provisions governing local Funds that may be negotiated by the local parties and set forth as a written Addendum to this Agreement. The Employer shall likewise comply with bonding requirements established by the Trustees of the National Funds.

**(b).** When an Employer is performing any work specified in Article I of this Agreement outside of the area covered by this Agreement, and within the area covered by another Agreement with a local union affiliated with the Sheet Metal Workers' International Association, the Employer shall comply with uniformly applied bonding requirements of that local area that are reasonable and necessary to ensure the timely payment of any contribution that may be required to local and national Funds, but in no event shall such bonds be in excess of three (3) months estimated contributions to local and national Funds.

**(c).** An Employer that has been delinquent in making contributions to any national or local fund shall, upon written notification of the trustees or local union, make the specified payment to such fund at weekly intervals. Such obligation shall continue until the Employer has not been delinquent in making contributions for a period of (3) consecutive months.

## ARTICLE IX

**Section 1.** Journeyman and apprentice sheet metal workers covered by this Agreement shall provide for themselves all necessary tools.

**Section 2.** Journeyman, apprentice and pre-apprentice sheet metal workers covered by this Agreement shall not be permitted or required as a condition of employment to furnish the use of automobile or other conveyance to transport men, tools, equipment or materials from shop to job, from job to job, or from job to shop; facilities for such transportation to be provided by the Employer.

**Section 3.** If the journeyman or apprentice is uninsurable by the employers' insurance company, the employee shall furnish themselves transportation from shop to jobsite and from jobsite to jobsite as may be required to perform the work contained in Article I of this agreement.

This provision shall not restrict the use of an automobile or other conveyance to transport its owner and personal tools from home to shop or job at starting time or from job to home at quitting time.

## ARTICLE X

The Union and the Employer, whether party to this Agreement independently or as a member of a multi-employer bargaining unit, agree to utilize and be bound by this article.

**Section 1.** Grievances of the Employer or the Union, arising out of interpretation or enforcement of this Agreement, shall be settled between the Employer directly involved and the duly authorized representative of the Union, if possible. Both parties may participate in conference through representatives of their choice. The grievance procedure set forth in this Article applies only to labor-management disputes.

7

EXHIBIT A

To be valid, grievances must be raised within thirty (30) calendar days following the occurrence giving rise to the grievance, or, if the occurrence was not ascertainable, within thirty (30) days of the first knowledge of the facts giving rise to the grievance.

**Section 2.** Grievances not settled as provided in Section 1 of this Article may be appealed by either party to the Local Joint Adjustment Board where the work was performed or in the jurisdiction of the employer's home local and such Board shall meet promptly on a date mutually agreeable to the members of the Board, but in no case more than fourteen (14) calendar days following the request for its services, unless the time is extended by mutual agreement of the parties or Local Joint Adjustment Board. The Board shall consist of representatives of the Union and of the local Employers' Association and both sides shall cast an equal number of votes at each meeting.

The local Employers' Association on its own initiative may submit grievances for determination by the Board as provided in this Section. Except in the case of a deadlock, a decision of a Local Joint Adjustment Board shall be final and binding.

Notice of appeal to the Local Joint Adjustment Board shall be given within thirty (30) days after termination of the procedures prescribed in Section 1 of this Article, unless the time is extended by a mutual agreement of the parties.

**Section 3.** Grievances not disposed of under the procedure prescribed in Section 2 of this Article, because of a deadlock or failure of such Board to act, may be appealed jointly or by either party to a Panel, consisting of one (1) representative appointed by the Labor Co-Chairman of the National Joint Adjustment Board and one (1) representative appointed by the Management Co-Chairman of the National Joint Adjustment Board. Appeals shall be mailed to the National Joint Adjustment Board. Notice of appeal to the Panel shall be given within thirty (30) days after termination of the procedures prescribed in Section 2 of this article. Such Panel shall meet promptly but in no event more than fourteen (14) calendar days following receipt of such appeal, unless such time is extended by mutual agreement of the panel members. Except in case of deadlock, the decision of the panel shall be final and binding.

Notwithstanding the provisions of Paragraph 1 of this Section, an Employer who was not a party to the labor agreement of the area in which the work in dispute is performed may appeal the decision of the Local Joint Adjustment Board from that area, including a unanimous decision, and a Panel hearing as set forth in Section 3 of this Article, providing such appeal is approved by the Co-Chairman of the National Joint Adjustment Board. Such a right of appeal shall exist despite any contrary provision in the agreement covering the area in which the work is performed.

For the purposes of this Section, an Employer who is party to the Labor Agreement of the area in which the work in dispute is performed, but has no permanent shop within the area served by the Local Joint Adjustment Board that rendered the unanimous decision, shall also be entitled to appeal a deadlocked or unanimous Local Joint Adjustment Board decision, and request a Panel hearing.

8

EXHIBIT A

**Section 4.**  Grievance not settled as provided in Section 3 of this Article may be appealed jointly or by either party to the National Joint Adjustment Board.  Submission shall be made, and decisions rendered, under such procedures as may be prescribed by such Board.  Appeals to the National Joint Adjustment Board shall be submitted within thirty (30) days after termination of the procedures described in Section 3 of this Article.  The Procedural Rules of the National Joint Adjustment Board are incorporated in this Agreement as though set out in their entirety.  Copies of the procedures may be obtained from the National Joint Adjustment Board.

**Section 5.**  A Local Joint Adjustment Board, Panel and the National Joint Adjustment Board are empowered to render such decisions and grant such relief to either party, as they deem necessary and proper, including awards of damages or other compensation.

**Section 6.**  In the event of noncompliance within thirty (30) calendar days following the mailing of a decision of Local Joint Adjustment Board, Panel or the National Joint Adjustment Board, a local party may enforce the award by any means including proceedings in a court of competent jurisdiction in accord with applicable state and Federal law.  If the party seeking to enforce the award prevails in litigation, such party shall be entitled to its costs and attorney's fees in addition to such other relief as is directed by the courts.

**Section 7.**  Failure to exercise the right of appeal at any step thereof within the time limit provided therefor shall void any right of appeal applicable to the facts and remedies of the grievances involved.  There shall be no cessation of work by strike or lockout during the tendency of the procedures provided for in this Article.  Except in case of deadlock, the decision of the National Joint Adjustment Board shall be final and binding.

**Section 8.**  In addition to the settlement of grievances arising out of interpretation or enforcement of this agreement as set forth in the preceding sections of this Article, any controversy or dispute arising out of the failure of the parties to negotiate a renewal of this agreement shall be settled as hereinafter provided.

(a) Should the negotiations for a renewal of this agreement or negotiations regarding a wage/fringe reopener become deadlocked in the opinion of the union representative(s) or the employer(s) representative(s), or both, notice to that effect shall be given to the National Joint Adjustment Board.

If the Co-Chairman of the National Joint Adjustment Board believe the dispute might be adjusted without going to final hearing before the National Joint Adjustment Board, each will then designate a panel representative who shall proceed to the locale where the dispute exists as soon as convenient, attempt to conciliate the differences between the parties and bring about a mutually acceptable agreement. If such panel representatives or either of them conclude that they cannot resolve the dispute, the parties thereto and the Co-Chairman of the National Joint Adjustment Board shall be promptly so notified without recommendation from the panel representatives.

EXHIBIT A

Should the Co-Chairman of the National Joint Adjustment Board fail or decline to appoint a panel member or should notice of failure of the panel representatives to resolve the dispute be given, the parties shall promptly be notified so that either party may submit the dispute to the National Joint Adjustment Board.

In addition to the mediation procedure set forth above or as an alternate thereto, the Co-Chairman of the Board may each designate a member to serve as a subcommittee and to hear the dispute in the local area.

Such committees shall function as arbitrators and are authorized to resolve all or part of the issues. They are not, however, authorized to deadlock, and the matter shall be heard by the National Joint Adjustment Board in the event a subcommittee is unable to direct an entire resolution of the dispute.

The dispute shall be submitted to the National Joint Adjustment Board pursuant to the rules as established and modified from time to time by the National Joint Adjustment Board. The unanimous decision of said Board shall be final and binding upon the parties, reduced to writing, signed and mailed to the parties as soon as possible after the decision has been reached. There shall be no cessation of work by strike or lockout unless and until said board fails to reach a unanimous decision and the parties have received written notification of its failure.

(b) Any application to the National Adjustment Board shall be upon forms prepared for that purpose subject to any changes, which may be decided by the Board from time to time. The representatives of the parties who appear at the hearing will be given the opportunity to present oral argument and to answer any questions raised by members of the Board. Any briefs filed by either party including copies of pertinent exhibits shall also be exchanged between the parties and filed with the National Joint Adjustment Board at least twenty-four (24) hours in advance to the hearing.

(c) The National Joint Adjustment Board shall have the right to establish time limits, which must be met with respect to each and every step or procedure, contained in this section. In addition, the Co-Chairmen of the National Joint Adjustment Board shall have the right to designated time limits, which will be communicated, to the parties by mail, telegram notification.

(d) Unless a different day is agreed upon mutually between the parties or is directed by the unanimous decision of the National Joint Adjustment Board, all effective dates in the new agreement shall be retroactive to the date immediately following the expiration date of the expiring agreement.

**SECTION 9.** Employers not contributing to the Industry Fund of the United States (IFUS) will be assessed a fee to be determined periodically by the Administrator of the National Joint Adjustment Board. Proceeds will be used to reimburse IFUS for costs of arbitration under the provisions of Article X.

10

EXHIBIT A

**SECTION 10.** In addition to the settlement of disputes provided for in Sections 1 through 8 of this Article, either party may invoke the services of the National Joint Adjustment Board to resolve disputes over the initial establishment of terms for specialty addenda, if the provisions of Article X have been adopted in their entirety, and without modification.

Such a dispute may be submitted upon the request of either party any time that local negotiations for such an agreement have been unsuccessful. Such a dispute shall be submitted to the National Joint Adjustment Board pursuant to the rules as established and modified from time to time by said Board. The unanimous decision of said Board shall be final and binding upon the parties. There shall be no strike or lockout over such a dispute.

## ARTICLE XI

**Section 1.** All duly qualified apprentices shall be under the supervision and control of Joint Apprenticeship and Training Committee composed of six (6) members, three (3) of whom shall be selected by the Employer, and three (3) by the Union.

Said Joint Apprenticeship and Training Committee shall formulate and make operative such rules and regulations as they may deem necessary and which do not conflict with the specific terms of this Agreement, to govern eligibility, registration, education, transfer, wages, hours, working conditions of duly qualified apprentices and the operation of an adequate apprentice system to meet the needs and requirements of the trade. Said rules and regulations when furnished and adopted by the parties hereto shall be recognized as part of this Agreement.

**Section 2.** The Joint Apprenticeship and Training Committee designated herein shall serve for the life of this Agreement, except that vacancies in said Joint Apprenticeship and Training Committee caused by resignation or otherwise, may be filled by either party hereto, and it is hereby mutually agreed by both parties hereto, that they individually an collectively cooperate to the extent that duly qualified apprentices be given every opportunity to secure proper technical and practical education experience in the trade, under the supervision of the Joint Apprenticeship and Training Committee.

**Section 3.** It is hereby agreed that the Employer shall apply to the Joint Apprenticeship Training committee and said committee shall grant apprentices on the basis of one (1) apprentice for each four (4) journeymen regularly employed throughout the year. Provided, however, that the ratio for employers engaged in solar, retrofit or energy-related work shall be (1) one to (3) three.

**Section 4.** All applicants for apprenticeship shall be eighteen (18) years of age and each apprentice shall serve an apprenticeship of five (5) years and such apprentices shall not be in charge of work on any job and shall work under the supervision of a journeyman until apprenticeship terms have been completed and they have qualified as journeymen.

EXHIBIT A

**Section 5.** A graduated wage scale for apprentices shall be established and maintained on the following basis of the established wage rate of journeyman sheet metal workers. The vacation fund will be classified as a benefit.

| | |
|---|---|
| First Year | First half 60% - Second half 60% |
| Second Year | First half 65% - Second half 70% |
| Third Year | First half 75% - Second half 80% |
| Forth Year | First half 85% - Second half 90% |
| Fifth Year | First half 95% - Second half 95% |

**Section 6.** It is hereby agreed that the Employer may apply to the Joint Apprenticeship Committee and the Joint Apprenticeship Committee shall grant pre-apprentices on the basis of one pre apprentice for each three apprentices employed by the Employer. Provided, however, that an Employer who employs one or more apprentices and at least three sheet metal journeymen shall be entitled in a least one pre-apprentice. Any apprentice of the employer on layoff at the effective date of this agreement must be rehired before said employer is entitled to any pre apprentice. Thereafter the same conditions and ratios shall apply.

Pre-apprentices shall be enrolled as applicants for future openings in the apprenticeship program.

The Joint Apprenticeship Committee shall evaluate the qualifications of pre-apprentices for such openings during the first year of employment. No pre-apprentice shall be retained beyond one year unless he has been found to be qualified as an applicant.

The wage scale for preapprentices shall be a minimum of forty percent (40%) of the wage rate for journeymen sheet metal workers. Health and welfare coverage shall be arranged on behalf of the preapprentices by the parties, to begin the first payroll after 180 days of employment.

Pension contributions will be paid on all hours worked by Pre-apprentices beginning with the first payroll period after 90 days of employment in the amount of Twenty-Eight ($0.28 cents) to the National pension fund.

EXHIBIT A

## ARTICLE XII

**Section 1.**  This Agreement and Addenda Numbers 1 through 10B attached hereto shall become effective on the 1st day of June, 2009 and remain in full force and effect until the 31st day of May, 2012 and shall continue in force from year to year thereafter unless written notice of reopening is given not less than ninety (90) days prior to the expiration date.  In the event such notice of reopening is served, this Agreement shall continue in force and effect until conferences relating thereto have been terminated by either party.

**Section 2.**  If pursuant to federal or state law, any provisions of this Agreement shall be found by a court of competent jurisdiction to be void or unenforceable, all of the other provisions of this Agreement shall remain in full force and effect.

**Section 3.**  Notwithstanding any other provision of this Article, or any other Article of this Agreement, whenever an amendment tot the Standard Form of Union Agreement shall be adopted by the National Joint Labor Relations Adjustment Committee, any party to this Agreement, upon the service of notice to all other parties hereto, shall have this Agreement reopened thirty (30) days thereafter, for the sole and only purpose of attempting to negotiate such amendment or amendments into this Agreement for the duration of the term hereof.  There shall be no strike or lockout over this issue.

In witness whereof, the parties hereto affix their signatures and seal this _____ day of _____, 20____.


_____          _____
CONTRACTOR                                BUSINESS MANAGER
                                          SHEET METAL WORKER'S
                                          INTERNATIONAL ASSN.
                                          LOCAL #103

EXHIBIT A

## Sheet Metal Workers' International Association Local 103 Addendum No. 1.
## To the Standard Form of Union Agreement

The terms of this agreement shall be from June 1st, 2009 to May 31st, 2012. Wage increases are to be as follows:

| Effective Date | Light Commercial and Residential | Schedule A |
|---|---|---|
| June 1, 2009 | $0.25 | $1.00 |
| December 1, 2009 | Wage opener | $1.00 |
| June 1, 2010 | Wage and Fringe Benefit opener | |

**Section 1.** The Parties signatory to this agreement agree, that if the Northwest Health and Welfare insurance premiums increase on/or after June 1, All premium increases would only take effect at the time of the Employee's next regularly scheduled wage increase on June 1st or December 1st.

**Section 2.** The Employer shall submit the vacation monthly to the Northwest Sheet Metal Workers Health Care Plans. This shall apply to the apprentice also, but not to pre-apprentices.

**Section 3.** Withdrawals for the Vacation Plan will be permitted during two (2) periods a year; after the first of June and after the first of December. Withdrawals may be made by mail, and must be signed by the account holder and a representative of the Union.

**Section 4. Foreman and General Foreman:** It is hereby agreed that a working foreman shall be provided and shall supervise any job upon which four or more Journeymen are employed.

An additional working foreman shall be provided and employed for any job upon which ten employees are working. When the number of employees, including working foreman, exceeds a total of fifteen, there shall be a General Foreman provided and employed. An additional General Foreman shall be provided and employed for any job upon which thirty employees, excluding working foremen are working. Working Foreman shall receive 10% per hour over the applicable Journeyman taxable wage and General Foreman shall receive 20% per hour over the applicable Journeyman taxable wage.

**Section 4.** Certain instances may arise on a job that has less than four journeymen employed, and a foreman may be required or needed. The parties agree that on such jobs, the Business Manager of the Union and the Employer agree to adjust the ratio contained in Section 4 of this Addendum by mutual agreement, as the job dictates.

14

EXHIBIT A

**Section 5. Shift Work:** The normal shift between the hours of 8:00 A, M, and 5:00 P.M. shall be paid at the rate of straight time. The second shift is to start no later than 5: 00 P.M. and shall be paid at the rate of eight hours pay plus ten percent, for seven and one-half hours worked.

The third shift is to start not later than 1:00 A.M. and shall be paid at the rate of eight hours pay plus fifteen percent, for seven hours worked.

Shift work other than normal shift worked shall be Monday through Friday, providing that five consecutive shifts are worked. Employees must have an eight-hour rest period when changing shifts. All hours worked over eight hours shall be paid at overtime rates.

### Section 6. Rates for normal shift and overtime:

Monday through Friday, 8:00 am to 5:00 pm is considered straight time.
Monday through Friday, 5:00 pm to 10:00 pm is time and one half (1 ½).
Work on Saturday shall be paid at time and one half (1 ½).
Monday through Friday, 10:00 pm to 8:00 am, all day Sunday, and all Holidays shall be paid at double time.

On all projects with a total cost of 5000.00 or more, with a contractor hiring another trade, or working on a composite basis, Monday through Friday, 5:00 pm to 10:00 pm, and all day Saturday, shall be paid at double time

Once a shift is commenced, compensation must be paid for an entire shift.

**Section 7.Travel:** When an employee travels into a subsistence zone he shall receive $0.45 per mile one time in and one time out, from nearest Post Office of employee's residency to Project.

**Section 8. Daily Travel:** Starting point will be an employee's bonafide residency or, when in subsistence zone, from nearest adequate accommodations or Post Office to project.

The starting point for out of state contractors will be determined the same as for the signatory Local # 103 contractors.

**Free Zone:** A. 20 miles including within the city limits of Glenrock, Wyoming.

| Daily Travel - One way | Company Vehicle | Personal Vehicle |
|---|---|---|
| 20 to 30 miles | $ 9.00 | $17.00 |
| 30 to 40 miles | $11.00 | $22.00 |
| 40 to 50 miles | $15.00 | $30.00 |

**B.** Within the City limits of Douglas, Wyoming shall be in the 40 to 50 mile zone, unless an employee requires overnight lodging, then it shall be under subsistence agreement.

**C.** For daily travel beyond 50 mile zone, 80 mile maximum one way, and when the employee elects or must travel back and forth; rather than subsistence, he shall be reimbursed the 40 to 50 mile zone plus mileage at the rate of $0.45 per mile, regardless who furnishes the transportation.

15

EXHIBIT A

**D.** An employee traveling from one job site to another job site during the working day, and furnishes own transportation, shall be reimbursed at $0.45 per mile.

**Section 9. Subsistence:** When an employee travels over 50 miles he shall receive actual expense or $60.00 per working day or cost of hotel room and $35.00 per day food allowance when mutually agreed to between the parties or other financial arrangements agreed by both parties - labor and management.
<u>See Paragraph 3 of daily travel.</u>

**Section 10. Holidays:** Should a holiday fall on a Friday or a Monday, subsistence shall be paid. Should a holiday precede a Friday or follow a Monday, the employee shall be paid normal subsistence if the job is shut down by direction of the employer on the Friday or workday(s) preceding the holiday. However, if the job is not shut down, the employee(s) shall forfeit such subsistence should he (they) not work on the Friday or workday(s) following the Monday or workday(s) proceeding such holiday.

**Section 11.** The Employment of any employee not working and not drawing wages from the employer for a period of two (2) consecutive working days shall be deemed terminated, and the employer shall issue to any employee a termination slip, said termination slips shall be furnished by the Union.

**Section 12.** Safety equipment is to be furnished by the employer excluding safety shoes and prescription items.

**Section 13.** The following hand tools shall be required as a condition of employment

**MINIMUM TOOL LIST**

| | |
|---|---|
| 1 PR. BULL DOG SNIPS | 1 SCRATCH AWL |
| SNIPS RIGHTS & LEFTS | 1 PR. TONGS |
| 1 SET TRAMMEL POINTS | 1 12 FT. STEEL TAPE |
| 1 SMALL DOLLY | 1 6" SCREW DRIVER |
| 1 PLUMB BOB & CHALK BOX | 1 6" PHILLIPS SCREW DRIVER |
| 1 PR. 8" DIVIDERS | 1 HAND CRIMPER |
| 1 HACKSAW FRAME | BENCH SNIPS MINIMUM # 18 WISS |
| 1 PR. SQUARE NOSE PLIERS | 1 DOVE TAILER |
| 1 SHEET METAL HAMMER | 1 8" CRESCENT WRENCH |

**Section 14.** The employee's toolbox shall be inventoried upon hire. The employer may at his discretion refuse to accept on the job tools other than those listed above.
The employer agrees to accept responsibility for the safety of all hand tools when stored in a company gang box - change shack, vehicle or any company-owned structure. The employer's responsibility is 80% of the cost of replacement. There must be proof of forced entry.

**Section 15.** The Sheet Metal Worker and Apprentice will extend their working day when on composite basis with a craft whose contract calls for longer than an 8-hour day. The overtime rate, time and one half or double time will be that of the composite craft, but in no case shall it be less than contained in this agreement.

16

EXHIBIT A

# ADDENDUM NO. 2.

**Section 1. Equal Treatment:** The Union shall not agree to more favorable terms and conditions than called for in this Agreement or any extensions thereof, in an agreement with any other employer. Should the Union do so, the Employer may, at its sole option, apply any or all such more favorable terms for the remainder of this Agreement. This shall not include concessions made on a resolution 78 project.

**Section 2.** The Employer shall be the sole judge of whether a term in another collective-bargaining agreement is more favorable than any term of this Agreement. The provisions of this paragraph may not be invoked with respect to any portion of Addendum No. 4.

**Section 3.** If any provision of this Agreement, or the enforcement of the same, is now, becomes, or is ruled to be contrary to the laws of the State of Wyoming or Federal Laws, such provisions shall be deemed to be of no force and effect; provided, further, should the law or laws affecting the validity of any such invalid provision be repealed, set aside or in any way removed, it is agreed that any such provisions, and the enforcement of the same, shall become immediately effective and applicable as between the employer and the Union.

**Section 4. Welfare Fund:** It is hereby agreed that the Welfare Agreement shall continue for the duration of this contract. This agreement is as follows: Effective June 1, 2009 the undersigned employer agrees to pay six dollars and Seventy cents ($6.70) per hour worked for all employees under jurisdiction of the Local Union to the Northwest Sheet Metal Workers Welfare Fund.

The welfare fund shall be administered jointly by an equal number of representatives of the Employers and of the Union, pursuant to an agreement and declaration of Trust. The said Trust agreement shall provide for annual audited reports of the income and expenditures of the welfare fund. The trustees shall furnish to participating Employers and all eligible employees a schedule of benefits and a description of the welfare plan.

The Employer agrees to furnish the Trustees with a monthly report containing the name, classification, social security number and the number of hours worked for each employee, and such other information as may be required for proper and efficient administration of the welfare plan.

The undersigned Employer hereby agrees to accept as Employer representatives on the Board of Trustees the person designated by the representatives of the Employers who are signatory to a Collective Bargaining Agreement which requires Employer payments to the "Northwest Sheet Metal Workers Welfare Fund." Such representatives designated as Trustees must be bonafide sheet metal contractors, and shall upon acceptance of the Trusteeship together with their successors, selected in the manner provided in said Trust Agreement the undersigned Employer and other Employers in the Administration of the Welfare Fund.

**17**

EXHIBIT A

**Section 5. Northwest Pension Fund and Supplemental Pension Plan (401K) Plan:** It is hereby agreed that the Pension and 401K Plan administered through the Northwest Sheet Metal Workers Pension Fund shall be adopted and continued for the duration of this contract. These plans are as follows: <u>Effective June 1, 2009</u> the employer shall pay contributions as contained in Addendums 1 and 4, for all employees except pre-apprentices, both union and non-union member's employees, under the jurisdiction of the Union to the Northwest Sheet Metal Workers Health Care Fund (hereinafter referred to as the Pension Fund.) Travel time, paid holidays and vacation time with pay shall be considered time worked for the purpose of determining such payments. The Pension Funds shall be used exclusively to provide for the benefit of eligible members and their dependents.  The hourly amount paid as provided in this paragraph is not and shall not be considered wages.

**Section 5(a) Northwest Pension Apprentice Contribution Diversion Program:** Apprentices may elect to divert pension contributions to wages in the following manner. This program is for apprentices only, and the apprentice is under no obligation to participate in this program.

If the apprentice elects not to participate, the employer shall contribute the total pension contribution rate on behalf of the apprentice at the pension contribution rate contained in this agreement. If the apprentice elects to participate in the program, the employer shall divert on a per hour basis, contributions to wages as per the schedule in section 5(b) of this addendum, and the employer shall submit the balance of the pension contribution to the pension fund on behalf of the apprentice.

Section 5(b)

| | |
|---|---|
| 1ST YEAR APPRENTICE DIVERTS | $1.50 |
| 2ND YEAR APPRENTICE DIVERTS | $1.00 |
| 3RD YEAR APPRENTICE DIVERTS | $0.75 |
| 4TH YEAR APPRENTICE DIVERTS | $0.50 |
| 5TH YEAR APPRENTICE | NO DIVERSION OPTION. |

**Section 6. The Northwest Pension Fund and Supplemental Pension Plan (401K)** shall be administered jointly by an equal number of representatives of the employers and of the Unions pursuant to an Agreement and Declaration of Trust. The employer's payments to the Pension Fund and Supplemental 401K shall be made monthly on a date and in a manner and form that shall be prescribed by the Trustees. The said Trust Agreement shall provide for an Annual Audited Report of the income and expenditures of the Pension and Supplemental 401K Funds. The Trustees shall furnish to participating employers and all eligible members a schedule of benefits and description of the Pension Plan and Supplemental 401K.

The Employer agrees to furnish the Trustees with a monthly report containing the name, classification, social security number and the number of hours worked for each employee and such other information as may be required for proper and efficient administration of the Pension Plan.

EXHIBIT A

The undersigned employer hereby agrees to accept as employer representatives of the Board of Trustees, the persons designated by the representatives of the employers that are signatory to a Collective Bargaining Agreement which requires employer payments to the "Northwest Sheet Metal Workers Health Care Plans". Such representatives designated as trustees must be bonafide Sheet Metal contractors, and shall, upon acceptance of the trusteeship, together with their successors elected in the manner provided in said Trust Agreement, represent the undersigned employer and other employers in the administration of the Pension and Supplemental 401K Plans.

**Section 7. National Pension Plan:**  Employers signatory to this agreement shall make contributions effective June 1, 2009 in the amount of Twenty-eight ($0.28) cents per hour worked to the Sheet Metal Workers National Pension Plan in the manner established presently and in the manner as may be changed from time to time by the trustees of the Sheet Metal National Pension Plan. Said contributions will be made on behalf of all employees covered by this Agreement, except pre-apprentices, for all hours and/or partial hours of employment for which pay is due in accordance with the provisions established in the Plan, "Standard Form of Participation Agreement" and the "Agreement and Declaration of Trust" for the plan. The "Standard Form of Participation Agreement" (Plan A) and the "Agreement and Declaration of Trust" establishing the Sheet Metal Workers National Pension Fund, and all amendments thereto during the term hereof will become binding on all parties bound by this agreement.

The Parties, after due negotiation, adopt the 2009 Default Schedule to this Collective Bargaining Agreement. This relates to the Employers' obligation to contribute to the Sheet Metal Workers' National Pension ("NPF") fund because its actuary has certified that the NPF is in Critical Status (the "Notice of Critical Status"). The Parties to this Agreement acknowledge that NPF ahs fully briefed them on the 2009 Default Schedule, its terms and consequences for Employers and Covered Employees. The 2009 Default Schedule is deemed incorporated into this Collective Bargaining Agreement.

**Section 8. Apprenticeship:**  Sheet Metal Workers Local 103 Local Apprentices Training and Education Fund. The contributions of the Employer shall be used for the express purpose and intent of continuing education, the promotion of the sheet metal industry, improvement and development of the apprentices and journeymen education and training programs as established by the parties to this agreement. :  Commencing June 1, 2009every Employer working under the terms of this agreement shall pay $0.65 Light Commercial and Residential and $1.40 per hour per Schedule A per hour actually worked by each employee.
The fund shall be administered jointly by equal representatives of the Union and the employer under a Declaration of Trust as executed by the parties hereto.

**Section 9. Sheet Metal Workers Remittance Report**  All benefits will be computed on one monthly form for all employees.  Report forms shall be sent in by the twentieth (20th) of the following month.  One copy and a check to: Northwest Sheet Metal Workers Health and Welfare Fund, P.O. Box 5433 Spokane, Washington 99205.  One copy and a check to: Sheet Metal Workers National Benefit Funds, P.O. Box 79321 Baltimore, MD. 21279-0321.

19

EXHIBIT A

**Section 10.   SASMI (Stabilization Agreement of Sheet Metal Industry)** The undersigned employer and local union agree as follows: Beginning on June 1, 2009 the Employer shall make monthly payments of an amount equal to three percent (3%) of the gross earning of each employee, excluding pre- apprentices, subject to this agreement to the National Stabilization Agreement of the Sheet Metal Industry (SASMI) Trust Fund.

Gross earning, for the purposes of this agreement, shall mean (a) total wages paid to an employee by the employer which are reportable by the employee for Federal Income Tax purposes and (b) any and all contributions paid by such employer on behalf of the employee to a pension or health and welfare fund.

The employer agrees to adopt the National SASMI Trust as presently constituted and as the same may be amended from time to time, to be bound by all Rules and Regulations of the Plan as adopted by the Trustees, as presently existing and as the same may be amended from time to time, and to sign the Standard Participation Agreement prescribed by the Trustees as a condition of becoming a party to and participant in such Trust.

## ADDENDUM NO. 3.
## REFERRAL PROCEDURE

In the interest of maintaining an efficient system of production in the industry, providing for an orderly procedure of referral of applicants for employment, preserving the legitimate interests of the employees in their employment status within the area and of eliminating discrimination in employment because of membership or non-membership in the Union, the parties hereto agree to the following system of referral of applicants for employment.

1. The Union shall be the sole and exclusive source of referrals of applicants for employment.

2. The Employer shall have the right to reject any applicant for employment.

3. The Union shall select and refer applicants for employment without discrimination against such applicants by reason of membership or non-membership in the Union and such selection and referral shall not be affected in any way by rules, regulations, by-laws, constitutional provisions or any other aspect or obligation of Union membership policies or requirements. All such selections and referrals shall be in accordance with the following procedure.

4. The Union shall maintain a register of applicants for employment established on the basis of the groups listed below. Each applicant for employment shall be registered in the highest priority group for which he qualifies.

**Group I.** All applicants for employment who have four or more years experience in the trade, are residents of the geographical area constituting the normal construction labor market, have passed a journeyman's examination given by this local, and who have been employed for a period of at least one year in the last four years under a collective bargaining agreement between the parties to this addendum.

**Group II.** All applicants for employment who have four or more years experience in the trade and who have passed a journeyman's examination given by this local.

20

EXHIBIT A

**Group III.** All applicants for employment, who have two or more years experience in the trade, are residents of the geographical area constituting the normal construction labor market and who have been employed for at least six months the last three years in the trade under a collective bargaining agreement between the parties to this addendum.

**Group IV.**   All applicants for employment who have worked at the trade for more than one year.

To refer applicants for employment to the employer within forty-eight hours from the time of receiving the employer's request, Saturdays, Sundays and holidays excepted, the employer shall be free to secure applicants without using the referral procedure, but such applicants, if hired, shall have the status of "temporary employees".

The Employer shall notify the Business Manager promptly of the names and social security numbers of such temporary employees, and shall replace such temporary employees as soon as registered applicants for employment are available under the referral procedure.

## DEFINITIONS

Examinations - An "examination" shall include rating tests if such examination shall have been given prior to the date of this Addendum, but from and after the date of this Addendum shall include only written and/or practical examinations given by this local Union. An applicant shall be eligible for examination if he has four years experience at the trade.

**1.** The Union shall maintain an "out of work list" which shall list the applicants within each group in chronological order of the dates they register their availability for employment.

**2.** Employers shall advise the Business Manager and/or Business Representative of the local Union of the number of applicants needed. The Business Manager and/or Business Representative shall refer applicants to the employer by referring applicants in Group I., in the order of their places on the "out of work list" and then referring applicants in the same manner successively for the "out of work list" in Group II, then Group III and Group IV. Any applicant who is rejected by the employer shall b e returned to his appropriate place with his Group and shall be referred to other employment in accordance with the position of his Group and his place within the Group.

The only exceptions which shall be allowed in this order of referral are as follows:  When the employer states bona fide requirements for special skills and abilities in his request for applicants, the Business Manager and/or Business Representative shall refer the first applicant on the register possessing such skills and abilities.

**3.** A copy of the referral procedure set forth in this Addendum shall be posted on the bulletin board in the offices of the local Union and in the offices of the employers who are parties to this Addendum.

21

## ADDENDUM NO 4.
## LIGHT COMMERCIAL - RESIDENTIAL

**SECTION 1.**  This addendum covers the rates of pay, rules and working conditions of journeymen and apprentice and pre-apprentices engaged in the erection of light commercial work as defined in Section 2 of this addendum.

**SECTION 2.**  Light commercial is defined as grade schools, middle school, high schools, warehouses, churches, retail stores, office buildings, hospitals, and shopping centers or any sheet metal job having total cost of two hundred thousand dollars ($200,000.00) or less. Sheet metal cost shall not include subcontractor's prices for work not covered by this agreement. Any project not covered by this addendum that justifies competitive concessions can be performed under this addendum with prior bidding approval by Local 103.  Traditional union projects, including but not limited to Power Plants, Chemical Plants, Coal Mines, Heavy Industrial work, and large commercial shall be excluded from this addendum.

**SECTION 3.**  The employer agrees that none but journeymen, apprentice and pre- apprentices shall be employed on work described in this section.

**SECTION 3(a).** Wage increases are to be as follows:

| Effective Date | Light Commercial and Residential | Schedule A |
|---|---|---|
| June 1, 2009 | $0.25 | $1.00 |
| December 1, 2009 | Wage opener | $1.00 |
| June 1, 2010 | Wage and Fringe Benefit opener | |

**SECTION 3(b).** The Parties signatory to this agreement agree, that if the Northwest Health and Welfare insurance premiums increase on/or after June 1, 2009. All premium increases would only take effect at the time of the Employee's next regularly scheduled wage increase on June 1st or December 1st.

**SECTION 3(c)** Apprentices shall be at the applicable percentage contained in the S.F.U.A.

**SECTION 3(d)** The ratio of journeymen to apprentices is one (1) Apprentice to one (1) Journeyman. Thereafter, one (1) Apprentice to three (3) Journeymen. One (1) apprentice may be employed in each shop or department employing a qualified journeyman, and one (1) additional apprentice for each three-(3) additional journeyman regularly employed.

EXHIBIT A

**SECTION 3(e).** The ratio of pre-apprentices to apprentices is one (1) pre-apprentice to each three-(3) apprentices employed. The employer may employ at least two (2) pre-apprentices regardless of the number of apprentices employed.

The employer shall have the right to utilize apprentices instead of pre-apprentices, in such ratios that are consistent with Section 3(d) pre-apprentice ratios of this addendum. The ratios provided for herein shall be computed using the entire journeymen workforce and shall not be computed on a job basis.

It needs be understood that with respect to the Architectural Metal provisions of the Sheet Metal Industries that certain instances may arise when more than contractual ratios of pre-apprentices to journeyman may have to be expanded. These instances may be negotiated prior to bidding. In unusual circumstances when prior agreement with the Union is not practical, the contractor may assume reasonable and necessary ratios.

**SECTION 3(f).** To the extent that the Union is unable to supply pre-apprentices within forty-eight (48) hours of a Contractor's request, the Contractor is free to hire pre-apprentices from whatever source and location the Contractor desires. The Union agrees to furnish pre-apprentices from the area the Contractor requests. This is to minimize subsistence and travel expenses.

**SECTION 3(g).** Pre-apprentices shall pay the regular amount of working assessments set by the local Union to Local 103. The Contractor agrees to check-off from the wages of each pre-apprentice the working assessments, and to remit it monthly to Local 103. When each pre-apprentice is first hired, the Contractor shall render to the pre-apprentice a payroll deduction check-off authorization form that the pre-apprentice may voluntarily sign.

**SECTION 3(h).** The employer shall also at its own discretion place employees at their designated work place, meaning in the field or in the shop at what composite is deemed necessary to perform the work with reference to Section 3(d) of this addendum.

**SECTION 3(i).** The wage rate provided for in this addendum shall become effective upon the execution of this contract by both parties.

**SECTION 4.  Overtime.** Overtime shall be paid to all employees at the rate of one and one half times the employee's regular hourly rate (Exclusive of fringe benefit contribution which will be paid at the regular hourly rate). For all hours over forty (40) worked in any given week, and for all hours worked on Saturday and Sundays as recognized in this addendum; provided however that the employer may authorize at it's sole discretion a week consisting of either five (5) eight (8) hour days, or four (4) ten (10) hour days. Overtime shall also be paid for any longer shifts than those designated herein. The employer shall designate the starting and quitting time. There shall be a thirty-(30) minute non-paid meal period scheduled, at the option of the employer, four (4) to six (6) hours from starting time.

In the event the employee is required to work through the thirty (30) minute lunch period and is unable to take a lunch break within one (1) hour of the scheduled time, then he shall be paid the applicable overtime rate and shall be given sufficient time to eat as soon as possible.

23

EXHIBIT A

**SECTION 5.** Except as otherwise provided in this addendum the employer has the full right of management of its facility and operations. The union therefore agrees that the employer shall have the right to plan, direct, control, increase, decrease or discontinue operations in whole or in part and to sell or dispose of all or any part of its assets, and to control and regulate the use of machinery equipment and other property of the employer.

The employer has the right to discipline or discharge employees, except that such discipline or discharge will be imposed only for just cause.

# ADDENDUM NO. 5
## SERVICE

**SECTION 1.** Wages and benefits for service journeyman and apprentices shall be as contained in addendum's one (1) and four (4) of this agreement.

**SECTION 2.** The regular working day shall consist of Eight (8) hours, exclusive of a non-paid lunch period, labor in the shop or on the job between the hours of 6:00 a.m. and 6:00 p.m. The regular working week shall consist of five (5) consecutive eight (8) hour day's labor in the shop or on the job, beginning with Monday and ending with Friday of each week. The employer may implement a four (4) day ten (10) hour workweek at its discretion.

**SECTION 2(a)** Employees shall receive one and one half (1 ½) times the regular straight time rate of pay for all hours worked in excess of forty (40) hours during the regular workweek, and all hours worked on Saturdays and Sundays.

Holidays shall be paid at double time the employee's regular rate of pay, with exception to the Friday following Thanksgiving Day, and the preceding Friday and following Monday holidays as contained in Section 2 of Article VI of this agreement. These days shall be paid at one and one half (1 ½) times the regular rate.

**SECTION 2(b) Occupied Buildings.** The employer at times contracts work that requires adjusting the regular workday starting and ending times. This most commonly requires work to be performed before, or after, regular business hours. The employer shall have the right to schedule employees to perform work in occupied buildings outside the regular workday on a straight time basis to a maximum of (10) ten hours.

24

EXHIBIT A

**SECTION 3. Standby/On-Call.** Each employee covered by this addendum will be required to participate in the Standby / On-Call rotation. The Standby/On-Call period is twenty-four (24) hours a day for seven (7) days.

All employees scheduled to work Standby/On-Call shall receive fifty dollars ($50.00) for the week. This payment is in addition to the regular rate of pay, including overtime. Failure of the employee to fulfill their Standby/On-Call obligations (unless such failure is caused by a recognized personal emergency) will result in the forfeiture of all Standby/On-Call payments, and, depending on the circumstances, may result in disciplinary action up to and including termination.

## SERVICE TOOL LIST

**SECTION 4.** The employee as a condition of employment shall provide the following tools.

SET NUT RUNNERS
SET SCREW DRIVERS
1-4 6 8 10 Inch CRESCENT WRENCHES
1- 12" CHANNEL LOCKS
HAMMER
SWEDGING TOOLS
1 SMALL 1 LARGE TUBING CUTTER
1- FLASH LIGHT
1- HACKSAW FRAME
2- VICE GRIP PLIERS
3/8" DRIVE SOCKET SET 1/4" - 7/8"
1- SQUARE NOSE SIDE CUT PLIERS
1- NEEDLE NOSE PLIERS

1- SET ALLEN WRENCHES S & L
1- VALVE CORE REMOVAL TOOL
SET END WRENCHES 1/4 "- 7/8"
1- REFRIGERATION WRENCH
1- INSPECTION MIRROR
1- 25' TAPE MEASURE
1- POCKET THERMOMETERS
1- TORPEDO LEVEL
1- SCRATCH AWL
1- PAIR AVIATION SNIPS R & L
1-10" & 1-12" PIPE WRENCH
1- TOOL BOX OR BELT OR BUCKET

**SECTION 6.** Any violation of any part of the Addendum's 1 through 7 contained herein is subject to the grievance procedure Article X Section 1 through 8 of the Standard Form of Union Agreement.

**SECTION 7.** All other matters pertaining to rules and working conditions within these addendum's not covered in these addendum's, shall be as specified in the Standard Form of Union Agreement.

EXHIBIT A

## ADDENDUM NO. 6
## INDUSTRY ENHANCEMENT CLAUSE

The parties' signatories to this agreement have a common interest in the Sheet Metal industry and as to the quality of life that this industry provides both labor and management. The Union agrees that industry promotion and better-trained labor will truly enhance the Sheet Metal industry.

The Union, employer, and Local JATC, agree to implement journeymen upgrade training as follows: A minimum of 12 hours training each six months during the term of this agreement shall be provided beginning June 1, 2009.

Each January for the term of this agreement a Union committee consisting of three (3) rank and file members, and the area Business Manager, Business Representative, and an Employer committee from the Casper area Employers group shall meet and determine if a substantial percentage of Local Union members are participating in the training programs that have been offered.

The Local Union Members must report their training to the JATC Coordinator within ninety (90) days of completion of the training for said training to be valid.

Members traveling into the Local jurisdiction covered by this agreement from other Local Unions shall not be included in determining this percentage.

If it is determined that the Local Union membership is not participating to the satisfaction of the two (2) committees the wage increases contained in the agreement will be deemed terminated for the purposes of this agreement and the effective wage termination date will be June 1, of the respective year. All other conditions contained in the agreement would remain in affect and the parties agree to enter into negotiations regarding wages and benefits only for the respective year of this agreement.

If the joint committee is unable to determine if a substantial number of members are attending the training classes, a neutral arbitrator will be selected from a list of three training related officials in the building trades industry. (Example; training coordinators from other trades, BAT representative) Each group shall strike one name from the list and the remaining name shall be the arbitrator. The decision of the arbitrator shall be final and binding on the parties.

Training will also be provided by the employer, either directly or through manufactures representatives. This training will qualify towards agreed hours of training provided for in this addendum. Attendance records and hours are to be maintained by the training coordinator.

26

EXHIBIT A

It is further agreed that the employer will not be a party in a lawsuit with an employee where the employee is seeking judgment against the union because of death or injury on job site or other places of employment.

The employer agrees that it will not rely upon any defense based upon majority status in any enforcement proceedings respecting this agreement. The employer agrees that it will not disavow agreement because of lack of majority status.

The Employer and the Union have a common and sympathetic interest in the Sheet Metal Industry. Therefore, a working system and a harmonious relation are necessary to improve the relationship between the Employer, the Union and the Public. Progress in industry demands mutuality of confidence between the Employer and the Union. All will benefit in continuous peace and by adjusting any differences by rational common sense methods.

EXHIBIT A

## ADDENDUM NO. 7
## INTEGRITY CLAUSE

**Section 1.**  A "bad-faith employer" for purposes of this Agreement is an Employer that itself, or through a person or persons subject to an owner's control,   has ownership interests (other than a non-controlling interest in a cooperation whose stock is publicly traded) in any business entity that engages in work within the scope of SFUA Article I hereinafter using employees whose  wage package, hours, and working  conditions are inferior to those prescribed in this Agreement or, if such business entity is located or operating in another area, inferior to those prescribed in the agreement of the sister local union affiliated with Sheet Metal Workers' International Association, AFL-CIO in that area.

An Employer is also a "bad-faith employer" when it is owned by another business entity as its direct subsidiary or as a subsidiary of any other subsidiary within the corporate structure thereof through a parent-subsidiary and/or holding-company relationship, and any other business entity within such corporate structure is engaging in work within the scope of SFUA Article I herein above using employees whose wage package, hours, and working conditions are inferior to those prescribed in this Agreement or, if such other  business entity is located or operating in another area, inferior to those prescribed in the agreement of the sister local union affiliated with Sheet Metal Workers' International  Association, AFL-CIO in that area.

**Section 2.**  Any Employer that signs this Agreement or is covered thereby by virtue of being a member of a multi-employer bargaining unit expressly represents to the Union that it is not a "bad-faith employer" as such term is defined in Section  I hereinabove and, further, agrees to advise the union promptly if at any time during the life of this Agreement said Employer changes its mode of operation and becomes a "bad-faith employer." Failure to give timely notice of being or becoming a "bad-faith employer" shall be viewed as fraudulent conduct on the part of such Employer.

In the event any Employer signatory to or bound by this Agreement shall be guilty of fraudulent conduct as defined above, such Employer shall be liable to the Union for liquidated damages at the rate of $500 per calendar day from the date of failure to  notify the Union until the date on which the Employer gives notice to the Union, The claim for liquidated damages shall be processed as a grievance in accordance with, and within the time limits prescribed by, the provisions of SFUA Article X. (END)

## DRUG AND ALCOHOL

The employer may implement a drug and alcohol policy which may include drug testing. The employer shall provide the union with all documentation of the entire policy. The employer shall pay all testing fees. If an employee should fail said drug test the employee shall pay for the cost of their testing.

28

EXHIBIT A

## ADDENDUM NO. 8

## RESIDENTIAL

## CONTINUOUS GUTTER & STEEL AND VINYL SIDING

**SECTION 1.** This addendum covers the rates of pay, rules and working conditions of journeyman and classified workers engaged in the fabrication and installation of Residential Continuous Gutter, and Vinyl and Steel Siding.

**SECTION 2.** The employer agrees that none but journeyman, apprentices, and classified workers, shall be employed on work described in SECTION 1 of this addendum.

**SECTION 3(a).** Wage rates are listed on the Wage Schedule. The wage rates provided for this addendum shall become effective upon the execution of this agreement by both parties.

**SECTION 3(b).** The Parties agree, that if the Northwest Health and Welfare insurance premiums increase on/or after June1, 2009 the same conditions apply as contained in the Standard Form of Union Agreement (SFUA).

**SECTION 3(c).** The ratio of classified workers to journeyman is three (3)-classified workers to one (1) journeyman.

**SECTION 3(d).** Journeymen covered under this addendum shall pay union dues at the rate applicable to SMWIA Local # 103 Residential Class A workers. Classified workers shall pay union dues at the rate applicable to 1st year apprentices after ninety (90) days of employment. All workers covered under this addendum will pay the applicable working dues (assessments).

**SECTION 3(e).** The employer shall at its own discretion place employees at their designated work place, meaning in the field or in the shop at what composite is deemed necessary to perform the work with reference to Section 3 (c) of this addendum.

**SECTION 4.** Overtime shall be paid to all employees at the rate of one and one half times the employee's regular hourly rate (Exclusive of fringe benefit contributions) which will be paid at the regular hourly rate. The employer shall designate the starting and quitting time. There shall be a thirty- (30) minute non-paid meal period scheduled, at the option of the employer, four (4) to six (6) hours from starting time.

**SECTION 5.** Holidays recognized in this addendum are as per Article VI Section 2 of the Standard Form of Union Agreement (SFUA). The rate of pay for holidays shall be as per Addendum No. 1 Section 6 of the master agreement.

EXHIBIT A

**SECTION 6.** Except as otherwise provided in this addendum the employer has the full right of management of its facility and operations. The union therefore agrees that the employer shall have the right to plan, direct, control, increase, decrease or discontinue operations in whole or in part and to sell or dispose of all or any part of its assets, and to control and regulate the use of machinery and other property of the employer.

The employer has the right to discipline or discharge employees, except that such discipline or discharge will be imposed only for just cause.

**SECTION 7.** Any violation of any part of this Addendum is subject to the grievance procedure of Article X of this Standard Form of Union Agreement (SFUA).

**SECTION 8.** Any sheet metal work performed not covered in this addendum will be performed under the terms and conditions of the Standard Form of Union Agreement (SFUA). All other matters pertaining to rules and regulations within this addendum not covered by this addendum shall be as specified in the Standard Form of Union Agreement (SFUA).

EXHIBIT A

## ADDENDUM NO. 9

## DUCT CLEANING

**SECTION 1.** This addendum covers the rates of pay, rules and working conditions of journeyman and classified workers engaged in the fabrication and installation of Duct Cleaning.

**SECTION 2.** The employer agrees that none but journeyman, apprentices, pre-apprentices, and classified workers, shall be employed on work described in SECTION 1 of this addendum. (Apprentices working under this addendum shall receive wages and benefits as contained in the Standard Form of Union Agreement, SFUA)

**SECTION 3(a).** Wage rates are listed on the Wage Schedule. The wage rates provided for this addendum shall become effective upon the execution of this agreement by both parties.

**SECTION 3(b).** The Parties agree, that if the Northwest Health and Welfare insurance premiums increase on/or after June1, 2009 the same conditions apply as contained in the Standard Form of Union Agreement (SFUA).

**SECTION 3(c).** The ratio of classified workers to journeyman is three (3)-classified workers to one (1) journeyman.

**SECTION 3(d).** Journeymen covered under this addendum shall pay union dues at the rate applicable to SMWIA Local # 103 Residential Class A workers. Classified workers shall pay union dues at the rate applicable to 1st year apprentices after ninety (90) days of employment. All workers covered under this addendum will pay the applicable working dues (assessments).

**SECTION 3(e).** The employer shall at its own discretion place employees at their designated work place, meaning in the field or in the shop at what composite is deemed necessary to perform the work with reference to Section 3 (c) of this addendum.

**SECTION 4.** Overtime shall be paid to all employees at the rate of one and one half times the employee's regular hourly rate (Exclusive of fringe benefit contributions) which will be paid at the regular hourly rate. The employer shall designate the starting and quitting time. There shall be a thirty- (30) minute non-paid meal period scheduled, at the option of the employer, four (4) to six (6) hours from starting time.

**SECTION 5.** Holidays recognized in this addendum are as per Article VI Section 2 of the Standard Form of Union Agreement (SFUA). The rate of pay for holidays shall be as per Addendum No. 1 Section 6 of the master agreement.

EXHIBIT A

**SECTION 6.** Except as otherwise provided in this addendum the employer has the full right of management of its facility and operations. The union therefore agrees that the employer shall have the right to plan, direct, control, increase, decrease or discontinue operations in whole or in part and to sell or dispose of all or any part of its assets, and to control and regulate the use of machinery and other property of the employer.

The employer has the right to discipline or discharge employees, except that such discipline or discharge will be imposed only for just cause.

**SECTION 7.** Any violation of any part of this Addendum is subject to the grievance procedure of Article X of this Standard Form of Union Agreement (SFUA).

**SECTION 8.** Any sheet metal work performed not covered in this addendum will be performed under the terms and conditions of the Standard Form of Union Agreement (SFUA). All other matters pertaining to rules and regulations within this addendum not covered by this addendum shall be as specified in the Standard Form of Union Agreement (SFUA).

EXHIBIT A

## ADDENDUM NO. *10*

## OWNER/MEMBER ADDENDUM *TO
## COLLECTIVE BARGAINING AGREEMENT

Bargaining unit employees hereunder shall include Owner/Members, i.e. employees of incorporated employers who: (a) are officers, directors, or stockholders of the employer; (b) perform work covered by the terms of this collective bargaining agreement; and (c) are listed in the Registration Statement filed with the Northwest Sheet Metal Workers Pension Trust ("Fund"). Subject to the provisions of the Registration Statement, contributions to the Fund must be made on the basis of 160 hours per month at the lesser of (1) the journeyman contribution rate set forth in the Employer's collective bargaining agreement, or (2) the journeyman contribution rate set forth in the SMACNA agreement for the geographic area in which the Owner/Member is employed. The employer agrees to be bound by the Agreement and Declaration of Trusts and Rules and Regulations governing the Fund.

## FOR LOCAL UNION NO. 103

By: _____
     Signature of Representative

Title: _____

Date: _____

## FOR THE EMPLOYER

By: _____
     Signature of Representative

Title: _____

Date: _____

EXHIBIT A

### ADDENDUM NO. *10 B*

### OWNER/MEMBER ADDENDUM *TO
### COLLECTIVE BARGAINING AGREEMENT

Bargaining unit employees hereunder shall include Owner/Members, i.e. employees of incorporated employers who: (a) are officers, directors, or stockholders of the employer; (b) perform work covered by the terms of this collective bargaining agreement; and (c) are listed in the Registration Statement filed with the Sheet Metal Workers' National Pension Fund ("Fund"). Subject to the provisions of the Registration Statement, contributions to the Fund must be made on behalf of Owner/Members on the greater of (a) 1680 hours per year*; (b) actual hours of work or for which the Owner/Member is paid, or is entitled to payment; or (c) a minimum hours requirement for Owner/Members contributions imposed by the collective bargaining agreement. The Employer agrees to be bound by the Agreements and Declaration of Trusts and Rules and Regulations governing the Fund.

## FOR LOCAL UNION NO. 103

By: _____
     Signature of Representative

Title: _____

Date: _____

## FOR THE EMPLOYER

By: _____
     Signature of Representative

Title: _____

Date: _____

EXHIBIT A